UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 04-30033-MAP |
| | ) | |
| vs. | ) | VIOLATIONS: |
| | ) | |
| 1.  RAYMOND ASSELIN, SR., | ) | 18 U.S.C. § 1962(c) - |
| 2.  ARTHUR SOTIRION, | ) | Racketeering (Count 1) |
| 3.  PETER DAVIS, | ) | |
| 4.  JOHN SPANO, | ) | 18 U.S.C. § 1962(d) - |
| 5.  PAUL BANNICK, | ) | Conspiracy to Commit |
| 6.  JANET ASSELIN, | ) | Racketeering (Count 2) |
| 7.  JAMES ASSELIN, | ) | |
| 8.  RAYMOND ASSELIN, JR. | ) | 18 U.S.C. §§ 201 and 371 - |
| 9.  JOSEPH ASSELIN, | ) | Conspiracy to Commit Bribery |
| 10. MELINDA ASSELIN, | ) | (Count 3) |
| 11. MARIA SERRAZINA, | ) | |
| 12. CHRISTOPHER ASSELIN, and | ) | 18 U.S.C. § 201 - Federal |
| 13. MERYLINA ASSELIN, | ) | Bribery (Counts 4 through 84) |
| _____ Defendants. | ) | |

18 U.S.C. §§ 371 and 641 -
Conspiracy to Commit Theft
Against the Government (Count
85)

18 U.S.C. §§ 371, 1341, 1343
and 1346 - Conspiracy to
Commit Mail and Wire Fraud
(Count 86)

18 U.S.C. §§ 1341 and 1346 -
Mail Fraud (Counts 87, 88, and
91 through 94)

18 U.S.C. §§ 1343 and 1346 -
Wire Fraud (Count 89)

18 U.S.C. §§ 371 and 1341 -
Conspiracy to Commit Mail
Fraud (Count 90)

18 U.S.C. § 1951 - Extortion
(Counts 95 and 96)

**18 U.S.C. § 1957 - Money
Laundering (Count 97)**

**18 U.S.C. § 1512 - Witness
Tampering (Counts 98 through
102)**

**18 U.S.C. § 1503 - Obstruction
of Justice (Counts 103 through
107)**

**26 U.S.C. § 7206(1) - Filing
False Income Tax Returns
(Counts 108 through 122)**

**Asset Forfeiture Allegations**

The Grand Jury charges:

## INDICTMENT

**COUNT 1:**        **Title 18, United States Code, Section 1962(c) -
Racketeering**

### Introduction

### Entities and Parties Involved

At all times relevant to this Indictment:

1.   The United States Department of Housing and Urban
Development (hereinafter "HUD") is the principal administrator of
the Nation's Public Housing Program.  The United States Housing
Act of 1937, as amended, established the Public Housing Program
with the goal of providing decent, safe and sanitary housing for
families of low-income.  The Act gives Public Housing Agencies
(hereinafter "PHAs"), an organization created by local government
to administer HUD's Public Housing Program and other HUD

2

programs, the responsibility for the development and management
of such housing. In addition, the Act provides for HUD funding
to go to the PHA to improve the physical condition and to upgrade
the management and operation of existing Public Housing
developments.

2.     The City of Springfield created the Springfield Housing
Authority (hereinafter "SHA") on August 29, 1946, and the
Commonwealth of Massachusetts ratified its organization shortly
thereafter.  SHA has been in operation ever since.  As such, SHA
was a unit of local government and a political subdivision of the
Commonwealth of Massachusetts.  A five member Board of
Commissioners (hereinafter "SHA Board") oversees the operation of
SHA.

3.     An Executive Director of SHA handles the day to day
administrative functions and reports to the SHA Board of
Commissioners.  A management team, including Assistant Executive
Directors of Maintenance and Administration, support the
Executive Director in the day to day operation of SHA.

4.     HUD, which is based in Washington, DC, has awarded
millions of dollars to SHA, which in turn uses those funds to pay
salaries, operation costs, procure materials and services from
vendors, and fund housing programs.  For example, in 2001, HUD
awarded SHA roughly $31,000,000.00 in federal funds for these
purposes.  The Executive Director and his management team

3

recommend to the SHA Board how those funds should be expended. The SHA Board in turn relies upon the advice and recommendation of the Executive Director and his management team to authorize the expenditure of HUD funds on behalf of SHA.

        5.    Congress established the Public Housing Management Assessment Program (hereinafter "PHMAP") via the Affordable Housing Act of 1990 to provide Congress and HUD with an objective system of measuring the management performance of PHAs.   In order to receive assistance from HUD, HUD required PHAs, like SHA, to prepare annually a true and correct PHMAP certification (Form HUD-50072) and submit the document to HUD.   On the certification, PHAs, such as SHA, certify as to the status of vacancies and unit turnaround, modernization, rents uncollected, work orders, annual inspection of units and systems, financial management, resident services, and security.   HUD relies upon this information from the certifications to decide where to direct its oversight and monitoring.   HUD subjects PHAs identified through the PHMAP certification as troubled to greater oversight, while those identified as high performers receive less oversight.

        6.    Defendant RAYMOND ASSELIN, Sr. (hereinafter "ASSELIN, SR.") was the Executive Director of SHA from approximately 1969 until his resignation in May, 2003.   As Executive Director, ASSELIN, SR. had an official responsibility to administer HUD funds and implement HUD programs in accordance with HUD rules and

4

regulations. As such, ASSELIN, SR. was a "public official" as defined in Title 18, United States Code, Section 201. ASSELIN, SR., however, was also an employee of the Commonwealth of Massachusetts, and therefore, was a "state, county or municipal employee" as defined in Massachusetts General Laws Chapter 268A, §§1 and 2. As the Executive Director, ASSELIN, SR. handled SHA's day to day operations and basically ran SHA. ASSELIN, SR. was also SHA's Chief Contracting Officer and played an important role in procurement. As the Executive Director of SHA, ASSELIN, SR. had a duty to follow HUD rules and regulations in the performance of his job.

7.    Defendant ARTHUR G. SOTIRION (hereinafter "SOTIRION") began working at SHA in 1970 and served as SHA's Assistant Executive Director of Maintenance for many years until his resignation in April, 2003. As Assistant Executive Director, SOTIRION had an official responsibility to administer HUD funds and implement HUD programs in accordance with HUD rules and regulations. As such, SOTIRION was a "public official" as defined in Title 18, United States Code, Section 201. SOTIRION, however, was also an employee of the Commonwealth of Massachusetts, and therefore, was a "state, county or municipal employee" as defined in Massachusetts General Laws Chapter 268A, §§1 and 2. SOTIRION's duties included, among other things, oversight over procurement and direct supervision of the

5

operation and maintenance of SHA's Riverview housing complex.   As

the Assistant Executive Director of Maintenance, SOTIRION had a

duty to follow HUD rules and regulations in the performance of

his duties.   Defendant SOTIRION resided at 811 Dickinson Street,

Springfield, MA and owned rental property at 48 Webber Street,

Springfield, MA.

8.   G & R Associates, Inc. was a contracting company that

did business with SHA.   G & R Associates received contracts from

SHA from the mid-1980s until late 2002.   G & R Associates, Inc.

received approximately $7.2 million in direct payments from SHA

from 1988 through late 2002.

9.   Manny's Plumbing & Heating, Inc. was a plumbing company

that did business with SHA.   Manny's Plumbing & Heating, Inc.

received $5.5 million in direct payments from SHA from 1988

through late 2002.   In approximately 1998, Manny's Plumbing &

Heating, Inc. and G & R Associates, Inc. formed a joint venture

to increase their bonding capacity in order to bid on larger

housing authority jobs.   Manny's Plumbing & Heating, Inc./G & R

Associates, Inc., a Joint Venture, received $1.8 million from SHA

in 1998 as a general contractor.

10.   Defendant PETER DAVIS (hereinafter "DAVIS") owned

and operated a contracting business called P.J. Richfield, Inc.

from approximately 1986 through the late 1990s.   P.J. Richfield,

Inc. received approximately $3.1 million in direct payments from

6

SHA from approximately 1990 through May, 1998.

11.   Defendant JOHN SPANO (hereinafter "SPANO") owned and operated a flooring business called Valley Floor Covering, Inc. Valley Floor Covering, Inc. received in excess of approximately $500,00.00 from SHA and G & R Associates, Manny's Plumbing & Heating and other SHA vendors as a sub-contractor.

12.   Defendant PAUL BANNICK (hereinafter "BANNICK") owned and operated a chemicals business called Paul A. Bannick Co. Paul A. Bannick Co. sold various chemicals to SHA for approximately twenty years.  Paul A. Bannick Co. received approximately $528,000.00 from SHA from 1988 through 2002.

13.   Oak Pond Farms, Inc. was a corporation created in early 1996.  William Pappas was the President of Oak Pond Farms, Inc.  The ostensible purpose of the corporation was to provide architectural and engineering services for interior renovations at SHA's Tri-Towers and Christopher Court apartment complexes. Oak Pond Farms, Inc. received $254,711.00 from SHA from 1995 through 1998.

14.   M & D Remodeling, Inc. was a contracting company that did business with SHA.  M & D Remodeling, Inc. primarily performed smaller contracting jobs for SHA.  M & D Remodeling, Inc. received approximately $135,000.00 in direct payments from SHA from 1988 through 1999.

15.   Defendant JANET ASSELIN is the wife of ASSELIN, SR.

7

Defendants JANET ASSELIN and ASSELIN, SR. reside at 115 Mayfair
Avenue, Springfield, MA.  Defendant JANET ASSELIN formally took
over the bookkeeping duties of the "Committee to Elect
Christopher Asselin" beginning in approximately 2002.

16.  Defendant JAMES ASSELIN is the oldest son of defendants
ASSELIN, SR. and JANET ASSELIN.  Defendant JAMES ASSELIN and his
wife purchased and moved into a residence at 16 Dwight Road,
Springfield, MA in late 1989.  From approximately 1996 until his
resignation in June, 2002, defendant JAMES ASSELIN was the head
of the City of Springfield's Office of Neighborhood Services and
later the Hampden County Employment and Training Consortium
(hereinafter "HCETC").

17.  Defendant RAYMOND ASSELIN, JR. (hereinafter defendant
ASSELIN, JR.) is the second oldest son of defendants ASSELIN, SR.
and JANET ASSELIN.  Defendant ASSELIN, JR. resides at 40 Santa
Maria Street, Springfield, MA.  Defendant ASSELIN, JR. owns and
operates a business called "RayTron, Inc.", which is located at
584 Page Boulevard, Springfield, MA.  Defendant ASSELIN, JR. also
began serving as the Treasurer of the "Committee to Elect
Christopher Asselin" in approximately 2000.

18.  Defendant JOSEPH ASSELIN is the middle child of
defendants ASSELIN, SR. and JANET ASSELIN and is married to
defendant MELINDA ASSELIN.  Defendants JOSEPH and MELINDA ASSELIN
resided at 421 Homestead Avenue, Holyoke, MA until 1997 at which

8

time they constructed a new residence at 518 Old Farm Road,
Amherst, MA, where they presently reside.  In 1994, defendant
JOSEPH ASSELIN began working for a local insurance agency where
he eventually rose to the position of Chief Financial Officer.

19.  Defendant MARIA SERRAZINA nee Asselin is the fourth
child of defendants ASSELIN, SR. and JANET ASSELIN.  Defendant
MARIA SERRAZINA resides at 140 Sallie Circle, Ludlow, MA.

20.  Defendant CHRISTOPHER ASSELIN is the youngest child of
defendants ASSELIN, SR. and JANET ASSELIN and is married to
defendant MERYLINA ASSELIN.  Defendants CHRISTOPHER and MERYLINA
ASSELIN purchased and moved into a residence at 184 Bowles Park
Extension, Springfield, MA in approximately the fall, 1996.
Defendant CHRISTOPHER ASSELIN unsuccessfully campaigned for state
representative for the 12th Hampden District in 1998, but
successfully ran in November, 2000 and was re-elected in
November, 2002.

## The Racketeering Enterprise

21.  At all times material to this Indictment, the
Springfield Housing Authority constituted an Enterprise as
defined by Title 18, United States Code, § 1961(4)(hereinafter
"the Enterprise"), which was engaged in, and the activities of
which affected, interstate commerce.  The Enterprise constituted
an ongoing organization whose members functioned as a continuing
unit for a common purpose of achieving the objectives of the

9

defendants described herein.  Defendants ASSELIN, SR. and
SOTIRION participated in the operation and management of the
Enterprise, inter alia by directing other members of the
Enterprise in carrying out unlawful and other activities in
furtherance of the conduct of the Enterprise's affairs.

### Objectives of the Racketeering Activity

22.  It was an objective of the defendants to conduct the
business and affairs of SHA for the personal, pecuniary and
political benefit of members employed by and persons associated
with the Enterprise by defendants ASSELIN, SR. and SOTIRION using
their positions within SHA to solicit and induce, and cause
others to solicit and induce, the payment of bribes, kickbacks,
illegal gratuities and other things of value from individuals and
businesses that had, or were seeking, business in or with SHA.

23.  It was an objective of the defendants to reward those
individuals and businesses that paid bribes, kickbacks,
gratuities and other things of value to members employed by and
persons associated with the Enterprise by defendants ASSELIN, SR.
and SOTIRION using their positions within SHA to award contracts,
steer sub-contracts, purchases goods and services, provide
preferential treatment, and otherwise direct SHA resources to
said individuals and businesses for the benefit of said
individuals and businesses.

24.  It was an objective of the defendants to convert SHA

10

resources to the personal, pecuniary, and political benefit of members employed by and persons associated with the Enterprise by using SHA funds, materials, personnel, and resources to, among other things, perform home maintenance and make home improvements at personal residences owned by members employed by and persons associated with the Enterprise, support political campaigns and candidates endorsed by members employed by and persons associated with the Enterprise, and direct public housing assistance to members employed by and persons associated, either directly or indirectly, with the Enterprise.

25.   It was an objective of the defendants to convert SHA housing resources, either in the form of public housing units or Section 8 vouchers, to the personal and political benefit of members employed by and persons associated with the Enterprise by, among other things, ordering SHA staff to circumvent SHA public housing and Section 8 waiting lists, causing SHA staff to backdate Section 8 housing applications, and falsely certifying to HUD that SHA was in compliance with HUD regulations, all for the purpose of providing preferential treatment for certain, select housing applicants.

26.   It was an objective of the defendants to conceal the participation in and enrichment of its members and persons associated with the Enterprise from the criminal activity by, among other things, maintaining their positions within SHA by

11

providing favors through SHA's housing assistance programs to
members of the SHA Board of Commissioners and others; falsifying
SHA's PHMAP and SEMAP certifications to avoid heightened
oversight by HUD; falsely certifying various Annual Contribution
Contracts with HUD; causing vendors and contractors to generate
false invoices and documents; failing to disclose the receipt of
things of value and conflicts of interest to the Board and HUD;
and obstructing an official proceeding and the due administration
of justice by destroying evidence, secreting evidence, and
advising potential witnesses not to tell the truth.

## Manner and Means of the Racketeering Enterprise

27.   Defendants ASSELIN, SR. and SOTIRION and their
associates conducted and participated in the conduct of the
affairs of the Enterprise by soliciting and inducing, and causing
others to solicit and induce, through the wrongful use of actual
and threatened economic harm, under the color of official right,
and otherwise, the payment of bribes, kickbacks, gratuities, and
other things of value, including free materials and services,
from SHA contractors and vendors, such as, but not limited to,
G & R Associates, Inc., Manny's Plumbing & Heating, Inc., P.J.
Richfield, Inc., Valley Floor Covering, Inc., Paul A. Bannick
Co., Oak Pond Farms, Inc., and M & D Remodeling, Inc.

28.   Defendants ASSELIN, SR. and SOTIRION and their
associates conducted and participated in the conduct of the

12

affairs of the Enterprise by then using those things of value to pay for, among other things, home improvements and other costs related to the personal residences of defendants ASSELIN, SR. and JANET ASSELIN, defendant SOTIRION, defendant SOTIRION's sister, defendant SOTIRION's father, defendant RAYMOND ASSELIN, JR., defendants JOSEPH ASSELIN and MELINDA ASSELIN, defendant MARIA SERRAZINA, defendants CHRISTOPHER ASSELIN and MERYLINA ASSELIN, and other members of and persons associated with the Enterprise; to fund and pay for political campaign costs associated with the "Committee to Elect Christopher Asselin"; and to pay for other personal expenses of members of and persons associated with the Enterprise.

29.    Defendants ASSELIN, SR. and SOTIRION and their associates conducted and participated in the conduct of the affairs of the Enterprise by then rewarding G & R Associates, Inc., Manny's Plumbing & Heating, Inc., P.J. Richfield, Inc., Valley Floor Covering, Inc., Paul A. Bannick Co., Oak Pond Farms, Inc., M & D Remodeling, Inc., and other SHA vendors for the payment of bribes, kickbacks, gratuities, and other things of value with contracts, sub-contracts, change orders, purchase orders, preferential treatment, and other SHA resources through their corrupt influence on the contract and purchase order bid process and otherwise directing general contractors to award sub-contracts to said individuals and businesses.

30.   Defendants ASSELIN, SR. and SOTIRION and their associates further conducted and participated in the conduct of the affairs of the Enterprise by devising and executing a scheme and artifice to defraud SHA and HUD of money, property and other things of value through false and fraudulent pretenses, representations, and statements, and knowingly causing to be sent, delivered or received by the United States Postal Service or private or commercial interstate carrier according to the direction thereon goods, materials, matters and other things in order to further the scheme and artifice to defraud SHA and HUD.

31.   Defendants ASSELIN, SR. and SOTIRION and their associates executed this scheme and artifice to defraud SHA and HUD of money, property, and other things of value by soliciting or receiving requests from members of the Asselin and Sotirion families for various services, such as home maintenance; home improvements; automobile maintenance; and materials, such as lawn mowers, snow blowers, power tools, tile, paint, stain, wood and other types of materials for personal residential maintenance and improvements; paper plates and plastic cups for summers at the Asselin beach house in Chatham; office supplies for the Committee to Elect Christopher Asselin and Raytron, Inc., and other assundry items.   Upon approval, members of the Asselin and Sotirion families at times personally ordered goods and materials from retail businesses, typically ones which maintained charge

14

accounts at SHA.  These retail businesses in turn shipped goods
and materials to SHA and invoiced SHA for those goods and
materials via the United States Postal Service and private and
commercial carriers, and SHA in turn paid those retail businesses
with checks sent via the United States Postal Service.

     32.  Defendants ASSELIN, SR. and SOTIRION and their
associates further executed this scheme and artifice to defraud
SHA and HUD by instructing SHA's Purchasing Department to order
the above-referenced personal requests through SHA.  SHA in turn
received bills for these goods and materials via the United
States Postal Service and paid for these goods and materials with
checks sent via the United States Postal Service.

     33.  Defendants ASSELIN, SR. and SOTIRION and their
associates further executed this scheme and artifice to defraud
SHA and HUD by, among other things, then ordering SHA personnel
while on SHA time to perform general maintenance, such as
painting, staining, wallpapering, yard care, and other types of
general residential and office maintenance, and make home and
office improvements, such as renovations, construction of decks,
installation of stairs, construction of shelves, window
replacement, and other types of home and office improvements, at
the personal residences of defendants ASSELIN, SR. and JANET
ASSELIN, defendant SOTIRION, defendant SOTIRION's father,
defendant JAMES ASSELIN, defendant ASSELIN, JR., defendants

15

JOSEPH ASSELIN and MELINDA ASSELIN, defendant MARIA SERRAZINA,

defendants CHRISTOPHER ASSELIN and MERYLINA ASSELIN; and the

business premises of RayTron, Inc. and the office of the

"Committee to Elect Christopher Asselin."

34.   Defendant ASSELIN, SR. and his associates also ordered

SHA personnel to circumvent SHA public housing and Section 8

waiting lists for certain, selected housing applicants.   These

housing applicants typically were referrals from friends, family,

members of the SHA Board or executive management, and local

politicians.   To comply with these orders, SHA personnel staff

manipulated SHA waiting lists, backdated Section 8 housing

applications, and engaged in other conduct to comply with the

directives of defendant ASSELIN, SR. and his associates.   From

the mid-1980s through April, 2003, defendant ASSELIN, SR. and

others in turn falsely certified to HUD that SHA was in

compliance with HUD housing regulations, thus causing HUD to fund

SHA's public housing and Section 8 programs year after year.

35.   Defendants ASSELIN, SR. and SOTIRION and their

associates conducted and participated in the conduct of the

affairs of the Enterprise by concealing the criminal activity of

the Enterprise and the participation in and enrichment of its

members employed by and persons associated with the Enterprise

by, among other things, falsifying SHA's PHMAP and SEMAP

certifications on a yearly basis to avoid heightened scrutiny;

16

falsely certifying Annual Contribution Contracts with HUD;
causing SHA contractors and vendors to submit false, misleading
and vague invoices to facilitate the conversion of SHA's
resources; enriching SHA employees in key positions to facilitate
and perpetuate the criminal activity of the Enterprise; secreting
and destroying evidence within SHA and within their personal
residences; and counseling witnesses how to testify falsely
before the grand jury.

## The Racketeering Violation

36.   Beginning by 1988 and continuing through April, 2003,
in the District of Massachusetts and elsewhere,

> **RAYMOND ASSELIN, SR.,**
> **ARTHUR SOTIRION,**
> **PETER DAVIS,**
> **JOHN SPANO,**
> and
> **PAUL BANNICK,**

and other individuals and entities known and unknown to the Grand
Jury, being persons employed by and persons associated with the
Enterprise identified herein, did knowingly and unlawfully
conduct and participate in, directly and indirectly, the conduct
of the affairs of the Enterprise through a pattern of
racketeering activity, that is, through the commission of
Racketeering Acts 1 through 248 as set forth below.

## The Pattern of Racketeering Activity

37.   The pattern of racketeering activity, as that term is

17

defined by Title 18, United States Code, §§ 1961(1) and 1961(5), consisted of the following acts:

## Racketeering Acts 1 through 75

38. Racketeering Acts 1 through 75 consisted of the following:

a. On or about the following dates, in the District of Massachusetts,

**RAYMOND ASSELIN, SR.**
**and**
**ARTHUR SOTIRION,**

defendants herein, each being a public official, did directly and indirectly corruptly demand, seek, receive, accept, and agree to receive and accept the following things of value from G & R Associates, Inc., all in return for and with the intent of being influenced in the performance of an official act; being influenced to commit and aid in committing and to collude in, and allow, a fraud, and to make opportunity for the commission of a fraud; and being influenced to act and omit to do an act in violation of his official duty; that is, to fraudulently generate bid proposals, collude in the preparation of bid proposals, award contracts, steer sub-contracts and otherwise provide preferential treatment during the terms of contracts to G & R Associates, Inc., all in violation of Title 18, United States Code, Sections 201(b)(2)(A), (B), and (C) and Title 18, United States Code, Section 2;

18

        b.    On or about the following dates, in the
Commonwealth of Massachusetts,

**RAYMOND ASSELIN, SR.**
**and**
**ARTHUR SOTIRION,**

defendants herein, each being a state employee, did directly and
indirectly corruptly ask, demand, exact, solicit, seek, accept,
receive, and agree to receive for himself and other persons and
entities the following things of value from G & R Associates,
Inc., in return for being influenced in the performance of any
official act or act within his official responsibility; being
influenced to commit and aid in committing and to collude in, and
allow any fraud, and to make opportunity for the commission of
any fraud on the Commonwealth and on a state, county or municipal
agency; and being induced to do and omit to do any act in
violation of his official duty; that is, to fraudulently generate
bid proposals, collude in the preparation of bid proposals, award
contracts, steer sub-contracts and otherwise provide preferential
treatment during the terms of contracts to G & R Associates,
Inc., all in violation of Massachusetts General Laws, Chapter
268A, Sections 2(b)(1), (2) and (3):

| Act | Violation | Thing of Value for Act a and b and Date | Beneficiary of Act a and b |
|---|---|---|---|
| 1a 1b | 18 USC 201 MGL Ch 268A | G & R Associates, Inc. Check No. 532 for $950.00 on or about 07/08/96 | Spruce stockade fence at rental property owned by defendant SOTIRION |

19

| 2a 2b | 18 USC 201 MGL Ch 268A | G & R Associates, Inc. Check No. 540 for $1,141.30 on or about 08/27/96 | Personal electronic equipment for members of the Asselin and/or Sotirion families |
|---|---|---|---|
| 3a 3b | 18 USC 201 MGL Ch 268A | G & R Associates, Inc. Check No. 565 for $450.00 on or about 08/14/97 | Surveying work at the residence of defendants JOSEPH and MELINDA ASSELIN |
| 4a 4b | 18 USC 201 MGL Ch 268A | G & R Associates, Inc. Check No. 583 for $330.00 on or about 10/17/97 | Surveying work at the residence of defendants JOSEPH and MELINDA ASSELIN |
| 5a 5b | 18 USC 201 MGL Ch 268A | G & R Associates, Inc. Check No. 594 for $9,211.81 on or about 11/12/97 | Three computers and computer monitors and two printers, among other items, for members of the Asselin family |
| 6a 6b | 18 USC 201 MGL Ch 268A | G & R Associates, Inc. Check No. 614 for $18,100.00 on or about 12/17/97 | Lumber and other construction materials at the residence of defendants JOSEPH and MELINDA ASSELIN |
| 7a 7b | 18 USC 201 MGL Ch 268A | G & R Associates, Inc. Check No. 615 for $5,500.00 on or about 12/17/97 | Labor for the framing of the residence of defendants JOSEPH and MELINDA ASSELIN |
| 8a 8b | 18 USC 201 MGL Ch 268A | G & R Associates, Inc. Check No. 616 for $4,030.00 on or about 12/22/97 | Concrete foundation for the garage and sunroom of residence of defendants JOSEPH and MELINDA ASSELIN |
| 9a 9b | 18 USC 201 MGL Ch 268A | G & R Associates, Inc. Check No. 623 for $75,525.00 on or about 01/23/98 | Partial payment towards $112,650.00 demanded by defendants ASSELIN, SR. and SOTIRION |